No. 24-3354
_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT
_____

**CYNTHIA BROWN, CARLOS BUFORD, JENNY SUE ROWE,**

*Plaintiffs-Appellants*,

v.

**DAVID YOST,**
Ohio Attorney General, in his official capacity,

*Defendant-Appellee.*
_____

On Appeal from the United States District Court for the
Southern District of Ohio, Case No. 2:24-cv-01401
_____

**PLAINTIFFS-APPELLANTS' EN BANC SUPPLEMENTAL
REPLY BRIEF**

Mark R. Brown
*Counsel of Record*
CAPITAL UNIVERSITY
303 E. Broad Street
Columbus, OH 43215
(614) 236-6590
mbrown@law.capital.edu

Oliver Hall
CENTER FOR COMPETITIVE DEMOCRACY
P.O. Box 21090
Washington, DC 20009
(202) 248-9294
oliverhall@competitivedemocracy.org

Kelsi Brown Corkran
Elizabeth R. Cruikshank
Alexandra Lichtenstein
William Powell
INSTITUTE FOR CONSTITUTIONAL
ADVOCACY AND PROTECTION
Georgetown University Law Center
600 New Jersey Avenue NW
Washington, DC 20001
(202) 661-6728
kbc74@georgetown.edu

*Attorneys for Plaintiffs-Appellants*

## TABLE OF CONTENTS

    Page
TABLE OF AUTHORITIES ................................................................................... ii
ARGUMENT .............................................................................................................. 1
   I. The Relief Sought Is Prospective and Is Not Barred by Sovereign Immunity... 1
   II. The Summary Provision Triggers First Amendment Scrutiny. ........................ 3
   III. The Summary Provision Fails First Amendment Scrutiny. ............................ 8
CONCLUSION......................................................................................................... 12
CERTIFICATE OF COMPLIANCE
CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson v. Celebrezze*,
  460 U.S. 780 (1983) ...................................................................................... 9

*Buckley v. Am. Const. Law Found., Inc.*,
  525 U.S. 182 (1999) ...................................................................................... 4

*Burdick v. Takushi*,
  504 U.S. 428 (1992) ................................................................................. 8, 9

*Carten v. Kent State Univ.*,
  282 F.3d 391 (6th Cir. 2002) ........................................................................ 3

*Doe v. Reed*,
  561 U.S. 186 (2010) .................................................................................. 4, 7

*Ernst v. Rising*,
  427 F.3d 351 (6th Cir. 2005) ........................................................................ 1

*First Nat'l Bank of Bos. v. Bellotti*,
  435 U.S. 765 (1978) ...................................................................................... 9

*Green Party of Tenn. v. Hargett*,
  767 F.3d 533 (6th Cir. 2014) ........................................................................ 9

*In re Flint Water Cases*,
  960 F.3d 303 (6th Cir. 2020) ........................................................................ 2

*Johanns v. Livestock Mktg. Ass'n*,
  544 U.S. 550 (2005) ...................................................................................... 6

*League of Women Voters of Ohio v. Brunner*,
  548 F.3d 463 (6th Cir. 2008) ........................................................................ 2

*Libertarian Party of Ky. v. Grimes*,
  835 F.3d 570 (6th Cir. 2016) ........................................................................ 9

*Little v. Reclaim Idaho*,
  140 S. Ct. 2616 (2020) .................................................................................. 8

*Matal v. Tam*,
  582 U.S. 218 (2017) ...................................................................................... 5

*Meyer v. Grant*,
  486 U.S. 414 (1988) ................................................................................ 4, 10

*Milliken v. Bradley*,
    433 U.S. 267 (1977) ............................................................................................2

*Minn. Voters All. v. Mansky*,
    585 U.S. 1 (2018) ..............................................................................................10

*Pleasant Grove City v. Summum*,
    555 U.S. 460 (2009) ........................................................................................ 5, 6

*Reed v. Goertz*,
    598 U.S. 230 (2023) ............................................................................................3

*Schmitt v. LaRose*,
    933 F.3d 628 (6th Cir. 2019) ........................................................................... 8, 9

*State ex rel. Brown v. Yost*,
    2024-Ohio-3025 ..................................................................................................11

*Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*,
    535 U.S. 635 (2002) ............................................................................................1

*Walker v. Texas Div., Sons of Confederate Veterans, Inc.*,
    576 U.S. 200 (2015) ............................................................................................5

**Constitutions**

Ohio Const. art. II, § 1g .............................................................................................12

**Statutes**

Ohio Rev. Code § 3519.01(A) ....................................................................................3

Ohio Rev. Code § 3519.05(A) ....................................................................................7

**Other Authorities**

Letter from Dave Yost to Donald J. McTigue (Apr. 5, 2023),
    https://tinyurl.com/2hxrvrcy ..............................................................................6

Respondent's Brief, *State ex rel. Dudley v. Yost*,
    No. 2024-0161 (Ohio July 11, 2024) ................................................................11

Defendant Dave Yost's supplemental brief misrepresents both the law and the facts, while ignoring the substance of Plaintiffs' arguments. He asks this Court to gut *Ex parte Young* and to create a blanket exemption from the First Amendment for the "mechanics" of the ballot initiative process, no matter how severe the burden on speech. The Court should reject Yost's radical and unsupported vision of the law.

## ARGUMENT

### I. The Relief Sought Is Prospective and Is Not Barred by Sovereign Immunity.

The "straightforward" *Ex parte Young* test for whether relief is prospective is nearly always satisfied where, as here, plaintiffs seek an injunction. *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002); *see also Ernst v. Rising*, 427 F.3d 351, 367 (6th Cir. 2005). Yost's contrary argument boils down to his claim that he has "already discharged his administrative duties as to the plaintiffs' March summary," such that, in his view, the alleged violation is not ongoing and the requested relief is retrospective. Yost Suppl. Br. 10. But Yost inaccurately portrays both the nature of Plaintiffs' claims and the type of relief they seek. Opening Suppl. Br. 6-8.

Yost's suggestion that *Ex parte Young* is inapplicable because there is no ongoing violation rests on his mischaracterization of Plaintiffs' claims. Yost Suppl. Br. 12. The violation Plaintiffs allege—Yost's exercise of his authority to reject their summary, preventing them from advocating for their proposed amendment—*is* ongoing because the statutory scheme remains in place and Yost continues to enforce it. *See League of*

1

*Women Voters of Ohio v. Brunner*, 548 F.3d 463, 475 (6th Cir. 2008). In any event, an ongoing "effect," Yost Suppl. Br. 12, triggers the *Ex parte Young* exception. The Supreme Court has held that injunctive relief does not implicate sovereign immunity when plaintiffs are still experiencing "the continuing effects of past misconduct," even when violations have ceased. *Milliken v. Bradley*, 433 U.S. 267, 290 (1977). This Court relied on *Milliken* to hold that "injunctive relief to remediate … ongoing harms" caused by past violations is prospective relief "under *Ex parte Young*." *In re Flint Water Cases*, 960 F.3d 303, 334 (6th Cir. 2020) (citing *Milliken*, 433 U.S. at 290). That holding did not "contradict[] binding precedent," Yost Suppl. Br. 12—it was mandated by precedent.

Yost also misrepresents the nature of the requested relief. Plaintiffs seek prospective relief not to reverse Yost's past decisions, but to enjoin Yost from enforcing the law moving forward. Because Ohio law requires that a summary accompany a ballot initiative during circulation, Plaintiffs identified the most recent summary at the time, from March 2024, as the one that Yost would forward to the Ballot Board under the requested injunction. The relief Plaintiffs sought, however, was not limited to approval of that particular summary.[1] *See* Complaint, R. 1, Page ID #12 (requesting, in addition to transmittal of the March 2024 summary, a declaration that Ohio Rev. Code

---

[1] As Yost acknowledges, ballot initiative efforts can roll over between elections, so neither the case nor the motion for a preliminary injunction is moot. Yost Suppl. Br. 6. To the extent that this Court is concerned that the passage of the 2024 ballot deadline or Plaintiffs' submission of a new summary raise new issues, however, it should remand to the district court to consider those issues in the first instance.

§§ 3519.01(A) & (C) are unconstitutional and a permanent injunction barring Yost from enforcing § 3519.01(A)). Moreover, this Court has squarely rejected Yost's argument that an injunction reversing a past decision constitutes retrospective relief. Injunctions seeking "reversal of a completed state decision," this Court explained, are "prospective in nature and [an] appropriate subject[] for *Ex parte Young* actions." *Carten v. Kent State Univ.*, 282 F.3d 391, 396 (6th Cir. 2002). Indeed, that is the point of an *Ex parte Young* injunction: to require a state official to do something he has already determined he will not. *See Reed v. Goertz*, 598 U.S. 230, 234 (2023).

Yost's argument that Plaintiffs should instead have brought a pre-enforcement challenge, Yost Suppl. Br. 12, is nonsensical. Because Plaintiffs challenge the ongoing enforcement of § 3519.01(A), they could not bring a pre-enforcement challenge at this point: the statutory scheme has already been applied to them. And if Plaintiffs had attempted to challenge Yost's rejection of a summary before submitting one, Yost would have undoubtedly argued that his potential future rejection presented only speculative harm and was unripe for suit.

## II. The Summary Provision Triggers First Amendment Scrutiny.

**1.** Yost recognizes that "States that choose to have an initiative process cannot abridge private speech during the process." Yost Suppl. Br. 14. That is precisely what the summary provision, coupled with the lack of timely judicial review, does to Plaintiffs' core political speech. *See* Opening Suppl. Br. 11, 16. It allows the Attorney General to prevent Plaintiffs from describing their proposed amendment in the

3

manner they wish to voters during petition circulation. It bars Plaintiffs from urging potential signatories to express their support for placing the proposed initiative on the ballot, impeding "interactive communication concerning political change." *Meyer v. Grant*, 486 U.S. 414, 421-22 (1988). And it makes it impossible for Plaintiffs to "garner the number of signatures necessary to place the matter on the ballot, thus limiting their ability to make the matter the focus of statewide discussion." *Id.* at 423. These are quintessential government restrictions on political expression, subject to strict scrutiny under *Grant*.[2] *See* Opening Suppl. Br. 10-11.

Yost fails to grapple with most of Plaintiffs' arguments. He ignores altogether that his gatekeeping prevents Plaintiffs from characterizing their proposed petition in the manner that they would prefer. *See id.* at 11. Contrary to his bald contention that the summary provision "does nothing to regulate who may speak on behalf of an initiative" or "what supporters of an initiative may say to voters when they circulate petitions," Yost Suppl. Br. 16, his enforcement blocks all initiative supporters from engaging in such direct one-on-one advocacy with voters. He also does not respond substantively to Plaintiffs' points that his review is both content-based and a restriction on core

---

[2] Yost argues that Plaintiffs "overread *Grant*" by quoting it directly. Yost Suppl. Br. 22-23. The fact that *Grant* did not require other provisions of the Colorado initiative process to survive strict scrutiny does not undermine Plaintiffs' arguments: Those provisions were not challenged in *Grant*, and in any case three more of them were struck down in *Buckley v. American Constitutional Law Foundation, Inc.* ("*ACLF*"), 525 U.S. 182, 187 (1999), notwithstanding language in that case acknowledging that "States have 'considerable leeway' to structure their initiative processes," Yost Suppl. Br. 23 (quoting *ACLF*, 525 U.S. at 191, and citing *Doe v. Reed*, 561 U.S. 186, 197 (2010)).

political speech, two independent triggers for strict scrutiny. *See* Opening Suppl. Br. 13-14. Nor does he attempt to show that his enforcement of the summary provision satisfies such scrutiny. Instead, Yost offers a series of counterarguments that misconstrue Plaintiffs' claims, the statutory scheme, and constitutional law.

Yost's assertion (at 16) that the summary ceases to be "private speech" once it is submitted for approval is a "dangerous misuse" of the government-speech doctrine, *see Matal v. Tam*, 582 U.S. 218, 235 (2017). Indeed, "[i]f private speech could be passed off as government speech by simply affixing a government seal of approval, government could silence or muffle the expression of disfavored viewpoints." *Id.*

Yost makes no attempt to satisfy the factors courts consider in determining whether speech is government speech, presumably because he cannot. Governments have not historically "used [citizen petitions] to speak to the public." *Pleasant Grove City v. Summum*, 555 U.S. 460, 470 (2009); *see Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 209-12 (2015). Quite the opposite: The whole point of a ballot initiative is to afford citizens the opportunity to directly govern themselves without representative government acting as intermediary. Moreover, citizen petition summaries are not certified based on whether the government "wish[es] to be associated" with the message conveyed, nor do people who observe them "interpret them as conveying some message" on the government's behalf. *Summum*, 555 U.S. at 471. In fact, Yost has "made it clear" that certification "does not constitute approval" of the summary. *Tam*, 582 U.S. at 237. His certification letters uniformly provide, "Without passing on the

5

advisability of the approval or rejection of the measure to be referred, but pursuant to the duties imposed upon the Attorney General's Office under Section 3519.01(A) of the Ohio Revised Code, I hereby certify that the summary is a fair and truthful statement of the proposed constitutional amendment," and he regularly notes, "This letter does not offer an opinion of the enforceability or constitutionality of the same." *See, e.g.*, Letter from Dave Yost to Donald J. McTigue (Apr. 5, 2023), https://tinyurl.com/2hxrvrcy. He even acknowledges that he has certified a summary for an amendment "that he personally disagreed with." Yost Suppl. Br. 24.

Nor does the government here maintain the kind of control over the summary that courts have considered relevant in assessing whether something constitutes government speech: This is not a case in which a government "sets the overall message to be communicated and approves every word that is disseminated" and "merely … solicits assistance from nongovernmental sources in developing specific messages." *Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 562 (2005); *see also Summum*, 555 U.S. at 472 (finding government speech where governments exercised editorial control "through prior submission requirements, design input, requested modifications, written criteria, and legislative approvals of specific content proposals" (internal quotation marks omitted)).

In arguing that a summary conveys the impression to prospective signatories "that [it] has the State's blessing," Yost Suppl. Br. 16, Yost misrepresents Ohio Rev. Code § 3519.05(A). The Attorney General's certification does not appear at the top of the petition. Instead, the sponsors' summary is printed immediately under the header

6

announcing an "INITIATIVE PETITION," and only "then shall follow the certification of the attorney general." Ohio Rev. Code § 3519.05(A). In short, the notion that a summary becomes "Ohio's official, certified petition[]," Yost Suppl. Br. 16, and is therefore government speech, makes no sense legally or factually. A petition by its very nature is an attempt by citizens to seek redress from the government.

Yost's argument (at 14-15) that the summary is legislative rather than communicative is similarly misguided. The language Yost quotes for this proposition (a nonbinding concurrence in the judgment signed by only one Justice) actually says: "When a … voter signs a referendum petition …, he is acting as a legislator." *Reed*, 561 U.S. at 221 (Scalia, J., concurring in the judgment). But Plaintiffs' claim is not about the legal significance of signatures, and their summary does not play a legislative role. The summary merely communicates the purpose of the proposed initiative to potential petition signatories; the summary language does not appear on the ballot and is not enacted into law. Moreover, even if the summary had some legislative function, Yost's argument would still fail. Although "signing a referendum petition may ultimately have … legal consequence," "adding such legal effect to an expressive activity" does *not* "deprive[] that activity of its expressive component, taking it outside the scope of the First Amendment." *Id.* at 195.

**2.** At a minimum this Court should continue to use the *Anderson-Burdick* test to assess the constitutionality of election regulations. The distinction Yost attempts to draw between regulations of the "governmental mechanics" of the initiative process

and regulations that curtail political speech is illusory. Yost Suppl. Br. 14. All sorts of facially neutral rules have collateral burdens of varying magnitudes on political speech. *See, e.g.*, *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) ("Election laws will invariably impose some burden upon individual voters."). Carving out such rules from *Anderson-Burdick* at the threshold may result in highly burdensome rules escaping constitutional scrutiny, whereas applying its "flexible" framework in the first instance will ensure appropriate levels of scrutiny depending on the extent of the burden. *See id.* at 434.

In any event, Yost has not shown that the provision here is the kind of election regulation that other circuits would exempt from *Anderson-Burdick* review. As discussed, *supra* at 3-4, the summary provision restricts both political speech and Plaintiffs' ability to circulate their petition, burdening their speech and associational rights. *See also* Opening Suppl. Br. 19-22. All circuits would thus agree that it implicates the First Amendment and warrants scrutiny. *See Little v. Reclaim Idaho*, 140 S. Ct. 2616, 2617 (2020) (Roberts, C.J., concurring in the grant of a stay) (regulations that "restrict political discussion or petition circulation" are not "neutral, procedural regulation[s]" that some circuits carve out from *Anderson-Burdick*).

### III. The Summary Provision Fails First Amendment Scrutiny.

Whether subjected to strict scrutiny as a restriction on core political speech or to more "flexible" review as a restriction whose burdens fall in the "middle" of the *Anderson-Burdick* framework, *see Schmitt v. LaRose*, 933 F.3d 628, 639 (6th Cir. 2019), the summary provision cannot pass muster. Yost does not even attempt to argue that the

8

provision could survive strict scrutiny, and it is beyond dispute that the provision fails under that exacting standard. *See* Opening Suppl. Br. 14-18. While Yost does briefly address application of lesser scrutiny under the *Anderson-Burdick* framework, Yost Suppl. Br. 19-22, the provision flunks that test as well, for many of the same reasons.

Under the *Anderson-Burdick* test, courts first consider the burdens imposed by the challenged restriction, then identify the State's justifications for the restriction, and then balance the burdens against the justifications. *See Libertarian Party of Ky. v. Grimes*, 835 F.3d 570, 574 (6th Cir. 2016); *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983); *Burdick*, 504 U.S. at 434. "[S]evere" burdens trigger strict scrutiny. *Green Party of Tenn. v. Hargett*, 767 F.3d 533, 546 (6th Cir. 2014). Regulations that are "minimally burdensome and nondiscriminatory" receive only rational-basis review. *Id.* Regulations that "fall in the middle" are subject to "a flexible analysis that weighs the state's interests and chosen means of pursuing them against the burden of the restriction." *Schmitt*, 933 F.3d at 639 (internal quotation marks omitted).

The summary provision's burdens on core political speech are severe, *see supra* at 3-4, but the provision would fail even if it fell within *Anderson-Burdick*'s middle category, as it is far more burdensome than needed to achieve the State's interests.

**Burden.** The summary provision imposes substantial burdens on Plaintiffs' speech. As explained above, the summary itself is protected speech about legislation, and nothing is more antithetical to the First Amendment than a law giving the government power to veto private speech. *See First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765, 791

9

(1978); *Minn. Voters All. v. Mansky*, 585 U.S. 1, 21-22 (2018). Moreover, Yost's standardless review gives him the power to unilaterally block initiative sponsors from engaging in petition circulation, which the Supreme Court has recognized as a unique avenue for political discourse. *See Grant*, 486 U.S. at 421.

Yost's attempts to downplay the burdens imposed by the summary provision suffer from at least three fatal flaws. First, Yost falsely states that "[p]etition circulators may say what they wish and offer any literature they like to prospective signers." Yost Suppl. Br. 20. But as long as Yost is blocking Plaintiffs' summary, they may not circulate their petition at all, much less speak to "prospective signers" while doing so. Yost's summary rejections thus restrict both "who may speak" and "what may be said" in the context of petition circulation. *Contra id.* No one may speak and nothing may be said.

Second, Yost mischaracterizes Plaintiffs' claim as concerning their access to the ballot, rather than their ability to speak in the petition-circulation process. *See id.* Based on that misunderstanding, Yost presents several irrelevant arguments about "the lack of any right to an initiative process." *Id.* It is Yost's gatekeeping of Plaintiffs' speech in the circulation process, not his gatekeeping of access to the ballot, that forms the basis of Plaintiffs' First Amendment claim. Yost offers no response to that claim.

Third, Yost glosses over the lack of timely, de novo review in the Ohio Supreme Court, which might otherwise provide a check on his unfettered discretion to block petition circulation. Although Yost concedes that the rules of that court do not provide for automatic expedited review in cases like this one, he says that "Ohio's High Court

10

has discretion to expedite such cases." *Id.* But since Plaintiffs filed their opening supplemental brief, the Ohio Supreme Court has again denied expedited review of Plaintiffs' challenge to Yost's latest rejection of their summary. *See State ex rel. Brown v. Yost*, 2024-Ohio-3025. Concurring in the denial, Chief Justice Kennedy strongly suggested that no challenge to the Attorney General's rejection of an initiative summary would ever meet the standard for expedited review. *Id.* at ¶¶ 7-9 (Kennedy, C.J., concurring). And while Yost makes no mention in his brief of the standard of review that the Ohio Supreme Court would apply, in that court he has argued that he is entitled to deference, further undermining judicial review as a limit on his discretion. *See* Respondent's Brief 5, *State ex rel. Dudley v. Yost*, No. 2024-0161 (Ohio July 11, 2024).

*Justification.* Ohio has legitimate interests in avoiding voter confusion and ensuring the fairness of elections, *see* Yost Suppl. Br. 21, but the summary provision does little to advance those interests. The summary never appears on any ballot—the Ballot Board drafts the language that does—so it is unlikely that a person deciding whether to vote for an initiative, as opposed to a person deciding whether to sign a petition, would consult the petition summary for information. At the earlier petition stage, potential signatories have access to the text of the proposed amendment, reducing the risk that they will be suckered by a misleading summary. The summary is thus less like "a bill's title" being read by the clerk in the General Assembly, *id.* at 16, and more like a legislator's speech on the steps of the Statehouse aimed at drumming up support for his proposed legislation. The State has little interest in regulating the content of the

11

latter, which is plainly protected speech.

Nor does the Ohio Constitution justify the summary provision. Yost quotes the relevant provision out of context. Yost Suppl. Br. 4, 20. What the Ohio Constitution actually says is that its provisions creating the initiative process "shall be self-executing," and that "laws may be passed to facilitate their operation, but in no way limiting or restricting either such provisions or the powers herein reserved" to the people. Ohio Const. art. II, § 1g. Evidently, the Ohio Constitution's Framers were more worried about safeguarding the people's initiative powers from elected officials like Yost than they were about safeguarding the process from citizens like Plaintiffs.

*Balance.* The substantial burden that the summary provision imposes on Plaintiffs' speech outweighs the limited benefit to the State's interests. The narrower alternatives in other states underscore that Yost's unilateral and practically unreviewable power to block petition circulation by rejecting summaries violates the Constitution. *See* Opening Suppl. Br. 17-18; Amici Br. 7-10. Yost's claim that he "reviews initiative summaries evenhandedly," Yost Suppl. Br. 24, is risible, given that he has now rejected Plaintiffs' summary in this very case seven times based on petty disagreements with Plaintiffs' wording. And in any event, the First Amendment does not allow government to say "trust us" when it comes to regulating speech.

## CONCLUSION

The Court should reverse the judgment of the district court denying Plaintiffs' motion for preliminary injunction and reinstate the injunction entered by the panel.

12

Dated: August 26, 2024                                   Respectfully Submitted,

                                                         */s/ Mark R. Brown*
                                                         MARK R. BROWN

| | |
|---|---|
| Mark R. Brown | Kelsi Brown Corkran |
| *Counsel of Record* | Elizabeth R. Cruikshank |
| CAPITAL UNIVERSITY | Alexandra Lichtenstein |
| 303 E. Broad Street | William Powell |
| Columbus, OH 43215 | INSTITUTE FOR CONSTITUTIONAL |
| (614) 236-6590 | ADVOCACY AND PROTECTION |
| mbrown@law.capital.edu | Georgetown University Law Center |
| | 600 New Jersey Avenue NW |
| Oliver Hall | Washington, DC 20001 |
| CENTER FOR COMPETITIVE DEMOCRACY | (202) 661-6728 |
| P.O. Box 21090 | kbc74@georgetown.edu |
| Washington, DC 20009 | |
| (202) 248-9294 | |
| oliverhall@competitivedemocracy.org | |

13

## CERTIFICATE OF COMPLIANCE

In accordance with Federal Rule of Appellate Procedure 32(g), I hereby certify that the foregoing En Banc Supplemental Reply Brief contains 12 pages in accordance with the briefing order entered on June 21, 2024 (Dkt. 41). I further certify that this brief complies with the typeface requirements of Federal Rule 32(a)(5) and the type-style requirements of Federal Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Garamond font.

*/s/ Mark R. Brown*
MARK R. BROWN

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of August 2024, this brief was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Mark R. Brown*
MARK R. BROWN