

Office of the Solicitor General
Office 614-466-8980
Fax 614-466-5087

October 29, 2024

Office of the Clerk
United States Court of Appeals for the Sixth Circuit
540 Potter Stewart U.S. Courthouse
100 E. Fifth Street
Cincinnati, Ohio 45202-3988

   Re: Letter Brief in *Brown v. Yost*, No. 24-3354

Dear Ms. Stephens:

  Below is a brief in response to the Court's October 25, 2024 request for simultaneous briefing.

**ARGUMENT**

This Court requested supplemental briefing about whether this appeal is moot. A mootness holding would end this appeal and thus, in effect, secure a win for Ohio. Even so, the Ohio Attorney General must admit that, in his view, this appeal is not moot. From there, it follows that the full Court should decide the important questions that this appeal presents. After all, a federal court "with jurisdiction has a virtually unflagging obligation to hear and resolve questions properly before it." *FBI v. Fikre*, 601 U.S. 234, 240 (2024) (quotation omitted).

To set the stage for a mootness analysis, recall the basic facts. The plaintiffs are a group of individuals who wish to amend the Ohio Constitution through the State's initiative process. But the plaintiffs have thus far failed to submit a fair summary of their initiative proposal, as Ohio law requires. *See* Ohio Rev. Code §3519.01(A). Last March, the Attorney General rejected the plaintiffs' seventh summary-language submission. The plaintiffs then sued the Attorney General in federal court, arguing that Ohio's review process for initiative summaries violates their First Amendment rights. The plaintiffs also sought preliminary relief. Specifically, they requested an injunction requiring the Attorney General to "immediately certify" their March summary, despite his earlier rejection. P.I. Mot., R.2, PageID#41. The District Court denied that request, and the plaintiffs filed this appeal.

At this point, the plaintiffs' interests in this appeal have no doubt reduced. More precisely, the plaintiffs have now missed the signature deadline for the 2024 election. *See* Ohio Const. art. II, §1a. So, the plaintiffs can no longer gain relief for the 2024 election through this appeal. Perhaps recognizing as much, the plaintiffs submitted another summary to the Attorney General in July. The Attorney General could not certify that summary. Ltr. from Ohio Att'y Gen. to M. Brown (July 15, 2024), https://perma.cc/3QM8-W4LX. So, the plaintiffs have sought review of the Attorney General's decision under state law in the Supreme Court of Ohio. That matter remains pending. *See State ex rel. Brown v. Yost*, No. 2024-1047 (Ohio).

But even with these developments, the plaintiffs still retain *some* interest in this appeal. If the Court were to mandate the preliminary relief that the plaintiffs originally sought (certification of the March summary), then the plaintiffs could get a head start on signature gathering for the next election cycle. That "concrete interest, however small," keeps this appeal alive. *See Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quotation omitted).

**I.    If a decision resolving a preliminary-injunction appeal could still have a practical effect, then that appeal is not moot.**

Under Article III of the U.S. Constitution, federal courts decide "Cases" and "Controversies." U.S. Const. art. III, §2. This language limits courts to deciding matters that can "affect the rights of litigants … before them." *Chafin*, 568 U.S. at 172 (quotation omitted). And this language imposes a "cradle-to-grave requirement." *Fialka-Feldman v. Oakland Univ. Bd. of Trs.*, 639 F.3d 711, 713 (6th Cir. 2011). If "events during the pendency of the litigation" make it apparent that a judicial "decision would lack any practical effect," then a case becomes moot. *Resurrection Sch. v. Hertel*, 35 F.4th 524, 528 (6th Cir. 2022) (*en banc*) (quotation omitted).

Mootness, however, requires extreme circumstances. A "case becomes moot only when it is *impossible* for a court to grant any effectual relief whatever to the prevailing party." *Chafin*, 568 U.S. at 172 (quotation omitted; emphasis added). If the party seeking relief retains some "concrete interest, however small, in the outcome of litigation, the case is not moot." *Id.* (quotation omitted).

When deciding whether an appellate decision would have any practical effect, this Court distinguishes "between mootness as to a preliminary-injunction appeal and mootness as to the case as a whole." *Resurrection Sch.*, 35 F.4th at 528 (quotation omitted). The point of a preliminary injunction "is to prevent any violation of the plaintiff's rights" during the pendency of a case. *Id.* (quotation omitted). If a decision could have some practical effect during the "window" of case litigation, then a preliminary-injunction appeal remains a live controversy. *Id.*

It is also imperative to avoid confusing "mootness with the merits." *Chafin*, 568 U.S. at 174. A plaintiff's "prospects of success"—which include whether a claim could "result in relief" that is legally permissible—are "not pertinent to the mootness inquiry." *Id.*; *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) ("[T]he absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction."). This divide between mootness and the merits helps explain why mootness and sovereign immunity are distinct inquiries. Because mootness does not go to the merits, a case can remain a live controversy even if sovereign immunity will inevitably operate as "a complete defense" to the relief a plaintiff requests. *Santa Rosa Mem. Hosp. v. Douglas*, 552 F. App'x 637, 639 n.2 (9th Cir. 2014). For example, if a plaintiff sued Ohio for a billion dollars, the plaintiffs would have a live interest in the money, even if sovereign immunity would block that relief.

## II.    Because a decision in this appeal could still have a practical effect, this preliminary-injunction appeal is not moot.

With the above principles in mind, return to this case. The plaintiffs here requested preliminary relief targeted at their March summary language. P.I. Mot., R.2, PageID#41. But the plaintiffs have "struggled to articulate" why they are entitled to such relief. Op., R.21, PageID#209. That has, in turn, led to confusion about federal jurisdiction in this case. *See* AG Supp. Br.8.

By this time, it is fair to conclude that certain aspects of the plaintiffs' request for preliminary relief have become moot. *See* Panel Op.42 (Bush, J., dissenting). For example, a key feature of the plaintiffs' theory is that, in cases where the Attorney General rejects summary language, Ohio's judicial review process does not allow for "timely de novo judicial review" before the Supreme Court of Ohio. *See* Compl., R.1, PageID#6. In May, however, the plaintiffs abandoned their case before the Supreme Court of Ohio about their March summary language. Panel Op.7 (majority op.). Consequently, the plaintiffs no longer have any live interest in how quickly the Supreme Court of Ohio proceeds as to their March summary language. *See id.* at 42 (Bush, J., dissenting).

But it does *not* follow that this appeal, as a whole, is moot. In addition to challenging Ohio's approach to judicial review, the plaintiffs' claims may be read to also challenge the Attorney General's role in the initiative summary process. *See* Panel Op.9. And again, the plaintiffs request a preliminary injunction forcing the Attorney General to reverse course and "immediately certify" their March language. P.I. Mot., R.2, PageID#41. Under these circumstances, preliminary relief could still be meaningful to the plaintiffs.

To understand why, consider an important point about Ohio law in this area. Once the Attorney General certifies summary language as fair, that certified language has no expiration date. *See* Ohio Const. art. II, §1a; Ohio Rev. Code §3519.01; *contrast with* Ohio Const. art. II, §1c (specifically setting a 90-day signature window for referendum petitions). An initiative proponent can thus continue collecting signatures on certified language even if they fail to meet the signature deadline for a given election. Take, for example, Issue 2, a recent Ohio initiative concerning the legalization of recreational marijuana. The Attorney General certified summary language for Issue 2 in August 2021. Ltr. from Att'y Gen. to J. Gilligan (Aug. 20, 2021), https://tinyurl.com/358mdx6v. But Issue 2 did not actually qualify for Ohio's ballot until more than two years later, in November 2023—when it successfully passed. *See* Ohio Ballot Board, *Issue 2 Certification* (Aug. 24, 2023), https://tinyurl.com/2m8fk9s5. That illustrates the potential multi-election-cycle lifespan of

certified summary language.

Here is the upshot for the plaintiffs. If this Court were to mandate relief forcing the Attorney General to immediately certify the plaintiffs' summary language, then the plaintiffs would have more time to gather the signatures needed to secure ballot access under Ohio law. That head start would have a practical effect. Notably, on this specific point, the plaintiffs and the Attorney General agree. The plaintiffs likewise submit that because "ballot initiative efforts can roll over between elections," their bid for "a preliminary injunction" still has some life. Supp. Reply 2 n.1.

Think of the mootness inquiry this way. Although the plaintiffs are wrong on the underlying merits, they allege that the Attorney General's review of initiative summaries (combined with other aspects of Ohio's system) violates the First Amendment. And in July the plaintiffs repeated the process, submitting a new summary for the Attorney General's review. Thus, crediting the plaintiffs' view of the merits, another constitutional violation has already occurred during the life of this case. In other words, accepting the fiction that Ohio's process violates the First Amendment, and accounting for the plaintiffs' repeat history of submitting summaries, granting the plaintiffs preliminary relief could prevent further First Amendment violations during the pendency of this case. *See Resurrection Sch.*, 35 F.4th at 528. With the proper judicial agnosticism regarding the merits, jurisdiction remains: the plaintiffs still have something at stake for this preliminary-injunction appeal.

The pending case in the Supreme Court of Ohio does not eliminate the plaintiffs' stake in this case. Nor does it interfere with this Court's jurisdiction. The pending case challenges the Attorney General's conclusion regarding the plaintiffs' July submission, which the Attorney General could not certify because it lacked a title. *See* Ltr. from Ohio Att'y Gen. to M. Brown (July 15, 2024), https://perma.cc/3QM8-W4LX. At issue in that case is whether the lack of a title prevents a summary from being fair and truthful under Ohio law, not whether Ohio's process violates plaintiffs' First Amendment rights. And even if the Supreme Court of Ohio agrees with the plaintiffs, that would not revive the separate (and materially different) March summary. Whereas the appeal before this Court—if the plaintiffs were to prevail—*would* revive the March summary.

Any mootness question in this case is also materially different from mootness questions that arose in initiative cases during the COVID-19 pandemic. For example, in *Thompson v. DeWine*, 7 F.4th 521 (6th Cir. 2021) (*per curiam*), initiative proponents claimed that Ohio's ballot-access laws for initiatives were too stringent when enforced during the pandemic. Those claims eventually became moot because the plaintiffs "tied their requests for relief exclusively" to the 2020 election. *Id.* at 522.

Here, by contrast, the plaintiffs' requests for relief are not confined to a single election. *See* Compl., R.1, PageID#12–13.

All told, the Court should rise to meet its "virtually unflagging obligation to hear and resolve" the "questions properly before it." *Fikre*, 601 U.S. at 240. As the Attorney General argued in seeking *en banc* review, this matter presents extremely important, recurring constitutional issues concerning the First Amendment, sovereign immunity, and ballot initiatives. The full Court's guidance on those issues matters a great deal to Ohio and all the States and their citizens. Because the plaintiffs chose to initiate this appeal, and because the appeal is not moot, the full Court should see it through to the conclusion.

## CONCLUSION

The Court should affirm.

Respectfully submitted,

DAVE YOST
Attorney General of Ohio

*/s/ T. Elliot Gaiser*
T. ELLIOT GAISER
Ohio Solicitor General
 \**Counsel of Record*
ZACHERY P. KELLER
KATIE ROSE TALLEY
Deputy Solicitors General
STEPHEN TABATOWSKI
Associate Assistant Attorney General
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
614-466-8980
614-466-5087 fax
thomas.gaiser@ohioago.gov

*Counsel for Appellee*
 *David Yost*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed R. App. P. 32 (f) and (g), I hereby certify that the foregoing brief complies with the page-length limitation of the Court's October 25, 2024 letter.

I further certify that the motion complies with Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Equity font.

*/s/ T. Elliot Gaiser*
T. ELLIOT GAISER

**CERTIFICATE OF SERVICE**

I hereby certify that on October 29, 2024, this brief was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ T. Elliot Gaiser*
T. ELLIOT GAISER